IN THE MATTER OF NORUS ACHMETOV, AN ATTORNEY
AT LAW.

May 11, 1982.

*Carl V. Greenburg* argued the cause for the District XI Ethics
Committee on December 19, 1979.

*Morrill Cole* argued the cause for the District XI Ethics
Committee on April 15, 1981.

*Herman Osofsky* argued the cause for respondent.

## ORDER

The Disciplinary Review Board having filed a report recommending that NORUS ACHMETOV of Passaic be disbarred for his unethical conduct, and the Court having reviewed the record

And the Disciplinary Review Board further recommending that respondent be required to reimburse the Administrative Office of the Courts for appropriate administrative costs, including reproduction of bank records and statements and auditing costs; and good cause appearing

It is ORDERED that the report of the Disciplinary Review Board recommending that respondent be disbarred is hereby adopted; and it is further

ORDERED that NORUS ACHMETOV be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately, and it is further

ORDERED that NORUS ACHMETOV be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that NORUS ACHMETOV reimburse the Administrative Office of the Courts for appropriate administrative costs, including reproduction of bank records and statements and auditing costs.

### Decision and Recommendation of the Disciplinary Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey:

This matter is before the Board based upon two presentments filed by the District XI Ethics Committee. Both presentments involve separate instances of misappropriation and misuse of trust funds, and recordkeeping improprieties, summarized as follows:

### I. DRB 79–169

Disciplinary proceedings were instituted following the filing of an ethics complaint by counsel for the Commonwealth Land Title Company on November 3, 1976. The complaint alleged that respondent failed to pay off a prior mortgage in excess of

$18,000 in relation to a July 26, 1976 real estate closing. Respondent did not deny this allegation, but by way of mitigation maintained that he closed title under the representation from his client that an additional sum of $6,000 necessary to pay off the mortgage would be forthcoming shortly. When the client failed to produce adequate funds to discharge the obligation, together with the further complication of respondent's bank setting off against his trust account an indebtedness which respondent owed the bank on a personal note, the integrity of respondent's trust account was impaired and he was unable to pay off the prior mortgage. Ultimately, on November 4, 1976 respondent paid the then outstanding amount of $18,850.36, using largely personal resources to make the payment. Further complications arose during the Committee's processing of the matter when the investigating member attempted to examine respondent's financial records. It was soon discovered that respondent's records were in such disarray that an accountant had to be retained to attempt to reconcile them.

The accountant examined respondent's records for the years 1975 and 1976 and found them to be totally inadequate. Apparently respondent's entire trust account records for the period in question consisted of only check stubs, 29 bank statements and cancelled checks. No understandable ledger showing the source of funds deposited, names of all persons for whom the funds were held, amount of such funds, charges or withdrawals, and names of persons for whom such funds were disbursed was kept. The audit revealed 23 instances of bank overdrafts totalling over $71,000 in respondent's trust account during 1975 and 1976.

The Passaic County Ethics Committee initially held a hearing in this matter on June 7, 1977. Thereafter on December 27, 1977 the Committee forwarded a report to the Administrative Office of the Courts, as was the procedure at that time, requesting that the Supreme Court authorize the Committee to issue a private letter of reprimand in the matter.

Prior to the Court acting on the matter however, the Committee, on March 1, 1978, informed the Administrative Office of the Courts that new allegations concerning recordkeeping deficiencies had arisen against respondent, and requested that its initial report be held in abeyance. Thereafter supplemental hearings were held on June 25, 1978 and October 24, 1978.

In April 1979 the Committee submitted a report to the Disciplinary Review Board indicating that the Committee was receiving monthly reports from respondent's accountant, that his financial records appeared to be in order and recommended that a private letter of reprimand be issued. The Board considered the Committee's recommendation and remanded the matter with instructions that a presentment be issued, the transcripts of hearings ordered and the matter scheduled for presentation before the Board. A presentment was thereafter issued on July 11, 1979 and a hearing was held before the Board on December 19, 1979.

At that time, the Board determined that the record clearly disclosed that respondent closed title to real property on behalf of a buyer with the knowledge that his trust account did not then contain sufficient funds to pay off an existing outstanding mortgage, that he failed to disclose this fact to the seller, the mortgagee or the title insurance company, and that during the period 1975 through 1976 he failed to maintain financial records in accordance with R. 1:21–6. The Board recommended public discipline of the respondent. The matter was remanded to the Board by the Court on December 4, 1980, for further consideration in light of other complaints pending against the respondent.

## II. DRB 81–67

The second presentment filed against respondent by the District XI Ethics Committee and docketed as DRB 81–67 concerns misuse and failure to properly segregate trust funds, as well as

respondent's misrepresentation regarding those trust funds in a sworn affidavit to a judge of the Chancery Division of the Superior Court. Respondent's actions involved two of his clients: P. A. B. L. Development and Construction Management, Inc. (PABL) and the Estate of Robert W. Matthewson.

## A. PABL MATTER

In October of 1978, James and Patricia DeLorenzo entered into a contract for construction and sale of a home with PABL. On October 10, 1978, pursuant to that contract, $10,990 was deposited with respondent to be held by him in escrow until closing. The money was deposited into respondent's trust account. Thirteen days later, respondent drew a check for $2,900 from these funds, made payable to himself. On October 25th, two days following the initial withdrawal, the balance of the DeLorenzo/PABL funds were withdrawn without authorization by means of a check for $8,000 made payable to James DeLorenzo. That check was endorsed by the respondent. Although DeLorenzo's name is written on the back of that check, he denies signing it, and nothing was presented to the Committee to indicate that DeLorenzo ever received those monies.

In the spring of 1980, suit was instituted by DeLorenzo against PABL, its principals, and respondent to compel the return of the trust funds. In response, respondent filed an affidavit with the court asserting that the funds continued to be held in escrow in the form of a Certificate of Deposit with the Trust Company of New Jersey. When ordered by the Court to produce the funds, the respondent deposited a check in the amount of $10,990 with the Clerk of the Superior Court. However, these funds were not the escrow funds resulting from the PABL-DeLorenzo contract, which had already been disbursed by respondent to himself as described above. To the contrary, these funds were misappropriated from monies held by respondent for the Estate of Robert W. Matthewson, as detailed below.

## B.  MATTHEWSON MATTER

Respondent acted as court appointed co-counsel to the joint administrators of the Estate of Robert W. Matthewson.  Pursuant to his responsibilities for the estate administration, respondent received two checks totalling $28,155.12, which were endorsed by the administrators and respondent.  That amount was deposited by respondent in his personal savings account No. 625–207 with The Trust Company of New Jersey on February 29, 1980.  On March 12th of that year, $11,000 of the $28,155.12 was withdrawn from the savings account and deposited in the respondent's trust account.  On the very same day, the respondent's trust account shows a withdrawal of $10,990 for payment of a certified check.  That certified check was utilized as described in II. A., above, to return the PABL/DeLorenzo escrow funds.

The District Ethics Committee concluded that the respondent misappropriated both the escrow funds being held pursuant to the PABL/DeLorenzo contract and the more than $28,000 belonging to the Estate of Robert W. Matthewson.  In addition, the Committee determined that the respondent, in affidavit regarding the PABL/DeLorenzo escrow deposit, misrepresented the facts to the Court.

On June 3, 1980, a Consent Order was entered temporarily suspending the respondent from the practice of law pending final disposition of the ethics complaints pending against him.

### CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Committee, in finding unethical conduct on the part of the respondent, are fully supported by clear and convincing evidence.  The record before the Board demonstrates that the respondent, on more than one occasion, has violated his primary obligation to clients by misappropriating funds ostensibly held in trust for them.  "No clearer wrong suffered by a client at the hands of one he had every reason to trust can be

imagined. The public is entitled.... as a simple matter of maintaining confidence, to know that never again will that person be a lawyer." *In re Wilson*, 81 *N.J.* 451, 456 (1979). His misrepresentation to the Court, presumably to conceal his misappropriation, was unconscionable. The underpinnings of our justice system is based in no small part on the ability of the courts to rely upon the representations of an officer of the court. Respondent's violation of this primary ethical obligation is reprehensible and cannot be tolerated.

In addition, the respondent's failure to maintain financial records in accordance with *R.* 1:21–6, as well as his closing title to real property on behalf of a buyer with advance knowledge that he held insufficient funds in his trust account to pay off an existing mortgage, without disclosure to the other parties, was clearly improper.

The Board therefore recommends that the respondent be disbarred. The Board further recommends that the respondent be required to reimburse the Administrative Office of the Courts for appropriate administrative costs, including reproduction of bank records and statements and auditing costs.

The Board is aware that the respondent is presently under indictment in Passaic County in a similar case, and that several similar ethics complaints are pending before the District XI Ethics Committee. The Board wishes to make clear that its recommendation to disbar is based solely upon its consideration of the respondent's unethical conduct as detailed in the two presentments before it. No consideration was given to the unadjudicated charges remaining against the respondent.

DATED:  June 16, 1981

DISCIPLINARY REVIEW BOARD
By:  A. Arthur Davis, 3rd
    A. Arthur Davis, 3rd
    Chairman